JOHNNIE DeBERNARD, Plaintiff-Appellant, v. ILLINOIS STATE BOARD OF EDUCATION *et al.*, Defendants-Appellees.

Second District   No. 2—87—1090

Opinion filed August 3, 1988.

Katz, Friedman, Schur & Eagle, Chartered, and Elizabeth N. Thiele-mann, of Illinois Educational Association, both of Chicago, and Kelly, Haus & Katz, of Madison, Wisconsin (Stephen G. Katz, of counsel), for appellant.

Klein, Thorpe & Jenkins, Ltd., of Chicago (J. Todd Faulkner, of counsel), for appellee Board of Education, Glenbard Township High School District No. 87.

Neil F. Hartigan, Attorney General, of Springfield, James E. Ryan, State's Attorney, of Wheaton, and Julia Quinn Dempsey, of Illinois State Board of Education, of Chicago (Susan Frederick Rhodes, Special Assistant Attorney General, of Chicago, of counsel), for other appellees.

JUSTICE DUNN delivered the opinion of the court:

Plaintiff, Johnnie DeBernard, was dismissed from her position as a contractual continued service (tenured) teacher by the Board of Education of Glenbard Township High School District No. 87 (Board). Pursu-

ant to section 24—12 of the School Code (Ill. Rev. Stat. 1985, ch. 122, par. 24—12), plaintiff requested a hearing, which was held before an impartial hearing officer. The hearing officer's opinion stated that plaintiff could resign within 30 days, and if she did not do so, the Board should consider her dismissed.

Rather than resign, plaintiff filed an administrative review action in the circuit court of Du Page County. The circuit court affirmed the decision of the hearing officer to terminate plaintiff's employment as a tenured teacher. This court allowed plaintiff's motion to file a late notice of appeal. On appeal, she argues the hearing officer's decision was contrary to the manifest weight of the evidence; she was denied a fair hearing due to improper communication between the Board and the hearing officer; and the Board lacked jurisdiction to dismiss her because she had requested a medical disability leave before she was dismissed. We now affirm the decision of the circuit court.

Plaintiff began teaching in the District 87 school system at Glenbard North High School in 1971 as a science teacher and later was assigned to the math department. In 1982, she requested and was granted a transfer to the Glenbard West High School math department. In late 1983 and early 1984, complaints from parents about plaintiff were received, prompting classroom observations of plaintiff's teaching. As a result, the then mathematics department chairman made recommendations to plaintiff concerning techniques to maintain student interest and involvement, student completion of homework, and return of homework and tests to students in a timely manner.

Further parental complaints were received by Glenbard West principal Dr. Elliott in the spring of 1984, however, and plaintiff was informed that she would continue to be evaluated during the next fall term. Student disciplinary problems were reported in her study hall in the fall of 1984, and on December 3, 1984, the Board issued plaintiff a notice to remedy certain deficiencies. The notice informed plaintiff that she had failed to maintain sufficient student discipline in her study hall; that she had failed to satisfactorily report her absences to the department chairperson and formulate detailed lesson plans for substitute teachers; and that her instructional performance had been deficient in that she had not consistently provided adequate direction in presenting lessons, evaluated student learning, required student diligence in completing assignments, or required broad student involvement during lessons. Plaintiff was also issued a memorandum by Dr. Elliott further explaining the deficiencies and advising her of the evaluation procedures.

Although plaintiff remedied the first three noted deficiencies, ob-

servations of her classroom teaching performance led to the issuance of a second notice to remedy on April 2, 1985. The second notice informed plaintiff that the deficiencies listed in the fourth area of the first notice were revised and amended, setting forth in more detail the ways in which plaintiff's teaching performance was considered deficient. Plaintiff was again issued a memorandum explaining the notice and the evaluation procedures. She was also informed by Dr. Elliott that after the final observations scheduled for January 1986, her progress would be reviewed and that unless consistent compliance with the notices to remedy was exhibited, her dismissal would be considered.

During the remedial period, plaintiff's classroom performance was evaluated by Dr. Elliott, by Mrs. Grenier, the assistant principal for instruction, and by Mr. Bloxam, the mathematics department chairman. Each evaluation was followed by a conference with the observer during which any noted deficiencies were discussed. Following the final observations in mid-January 1986, plaintiff was informed by Dr. Stevens, the school superintendent, that she had failed to comply with the requirements of the notice to remedy and that he would recommend to the Board that she be dismissed. Plaintiff was suspended pending the next board meeting, and on February 10, 1986, she was dismissed by the Board.

Plaintiff requested a hearing, and one was held before an impartial hearing officer. Testimony was heard on several days and a lengthy transcript was generated. The administrators who had observed plaintiff teach testified to numerous occasions on which plaintiff had not performed as required by the notices to remedy, and script tapes of their observations were introduced into evidence. Plaintiff presented testimony from a mathematics expert, Dr. Weinzweig, who disagreed with certain criticism of plaintiff's mathematics teaching skills by Mr. Bloxam. Another witness identified inappropriate comments on the script tapes, which are meant to be objective and nonjudgmental.

Plaintiff also introduced evidence of her state of health, both physical and mental, during the remedial period. In November 1984, plaintiff consulted her internist, Dr. Kolbaba, regarding symptoms of illness. Dr. Kolbaba treated her for high blood pressure and diagnosed plaintiff as depressed. He treated her depression with medication, and, in August 1985, he recommended that plaintiff see a psychiatrist. She did not see a psychiatrist, however, until January 6, 1986, when she consulted Dr. Kayton. She had a second appointment with Dr. Kayton a week later, and he recommended that she take a disability leave from teaching. Although she requested a disability leave, that request was

not acted upon, but, instead, she was informed that she would be dismissed.

At the conclusion of the hearing, the hearing officer issued a 120-page opinion which concluded that plaintiff could resign within 30 days or be considered dismissed. This determination was based on the hearing officer's findings that the evidence showed that she had failed to comply with the notices to remedy in the following respects:

"In seventeen evaluations, plaintiff did not state objectives of the lesson at the beginning of the lesson.

In five observations she did not outline for the students at the beginning of the lesson the activities of the lesson.

In ten of the observations she did not clearly and accurately sequence and present the subject matter of the lesson.

In seven of the observations she did not properly, clearly and accurately respond to student questions and errors.

In eight of the observations she did not respond to and dispel student confusion over the subject matter of the lesson.

In eight of the observations she did not reinforce student learning through summary or reteaching at appropriate times during the lesson.

In seven observations she did not signal and give directions for transitions between segments of the lesson.

In thirteen observations she did not pace the lesson to maintain organized instruction, activity and student involvement for the full class period.

In nine of the observations she did not require broad student involvement during lessons.

In eight of the observations she did not provide sufficient time to and actually give clear directions for homework.

In nine of the observations she did not require homework with appropriate frequency.

In eleven of the observations she did not assess student readiness to proceed with each major segment of the lesson.

In seven of the observations she did not respond to and dispel student confusion with appropriate reteaching and other techniques."

He also found that she did not satisfactorily, or with sufficient consistency, create and maintain an atmosphere conducive to student achievement in that:

"In ten of the observations her classroom was too noisy, too often for too lengthy periods.

In nine of the observations too many students, too frequently

did not pay attention to the lesson.

In seven of the observations too many students, too frequently did not bring to class and/or use appropriate instructional materials."

He found, in contrast, that only three evaluations were positive.

On the issue of plaintiff's disability request, the hearing officer concluded that her consultation with Dr. Kayton was a last-minute effort to save her teaching position. He therefore denied plaintiff's motion to dismiss which raised the issue of her disability. On administrative review, the circuit court likewise found that plaintiff had failed to prove by a preponderance of the evidence that her mental health problems prevented her from complying with the notices to remedy. The circuit court held that the hearing officer had dismissed plaintiff and that the decision to do so was not contrary to the manifest weight of the evidence.

■ Plaintiff first argues that the hearing officer's decision is contrary to both law and evidence. She contends that the hearing officer ignored evidence of the Board's bias, that he improperly gave more credit to the testimony of the observers than to Professor Weinzweig, and that he did not weigh the evidence or assess the credibility of the witnesses. She also maintains that the hearing officer made inadequate findings and came to no decisive conclusion as required by law.

On administrative review, it is the function of this court to determine whether the procedures required by law were followed and, if so, whether the decision of the hearing officer was against the manifest weight of the evidence. (*Board of Education v. State Board of Education* (1987), 154 Ill. App. 3d 375, 381.) It is true that a decision by a hearing officer must contain findings to make possible a judicial review of the administrative decision. (*Reinhardt v. Board of Education* (1975), 61 Ill. 2d 101, 103.) Contrary to plaintiff's assertions, however, the hearing officer here did make adequate findings. In his lengthy opinion, the hearing officer discussed each charge and evaluation and found there was evidence presented to support all of the charges. He found that only three of the evaluations were positive. It is clear that the hearing officer considered the negative evaluations as reason for plaintiff's dismissal. In *Reinhardt*, the court could not tell what the reasons were for the teacher's dismissal and, consequently, could not determine if the dismissal was contrary to the manifest weight of the evidence. (*Reinhardt*, 61 Ill. 2d at 104.) Here, in contrast, the hearing officer has set forth the reasons for plaintiff's dismissal so his findings are adequate for review.

■ The hearing officer was required to find whether the Board

proved by a preponderance of the evidence that a pattern of teaching deficiency warranting dismissal existed. (*Board of Education v. Ingels* (1979), 75 Ill. App. 3d 334, 337.) Plaintiff does not argue that the hearing officer applied an inappropriate standard to the issue of her teaching ability, but she does contend that improper weight was placed on certain evidence. In particular, she argues that the hearing officer ignored evidence of bias against her in the Board's preparation of the second notice to remedy before the scheduled observations were completed. She also notes that the observations scheduled under the second notice to remedy were "barely completed" when she was informed of her suspension. Such evidence, however, does not negate the conclusion that plaintiff did not comply with the notices. The second notice, which was adopted after all scheduled observations under the first notice, was issued because of deficiencies discovered during observations under the first notice. Furthermore, it appears that plaintiff was suspended soon after completion of observations under the second notice because the results of the observations were so consistently negative, not because the Board was biased against her. Plaintiff argues that further indications of bias were evidenced by inappropriate comments written on some of the script tapes. Although plaintiff's witnesses did testify that some comments should not have been included on the script tapes because such tapes should not contain conclusions, plaintiff did not refute the observations of her deficiencies in the tapes, even though she was given the opportunity to review the tapes with the observers in post-observation conferences.

Plaintiff also argues that the hearing officer gave no weight to the conclusions of Dr. Weinzweig that Mr. Bloxam made errors in his comments on plaintiff's teaching performance. It appears, however, that most of the discrepancies between the witnesses' testimony, which were not numerous, were the results of typographical errors in the typed versions of the script tapes and misinterpretation of some of Bloxam's comments. The hearing officer found both witnesses competent to give opinions on mathematics, and he clearly did not discount Dr. Weinzweig's testimony entirely. He concluded, however, that most of Mr. Bloxam's observations of deficiencies were supported by the evidence, despite Dr. Weinzweig's opinions to the contrary. Such conclusions of witness credibility are entitled to deference on review. (*deOliveira v. State Board of Education* (1987), 158 Ill. App. 3d 111, 124.) We believe the hearing officer gave proper consideration to both witnesses' testimony.

Although the hearing officer gave plaintiff an opportunity to resign, he did decide that plaintiff's dismissal was warranted. The choice

he gave plaintiff was obviously a sympathetic gesture offered to give plaintiff a chance to protect her work record. As the Board notes, there would have been no purpose in permitting plaintiff to resign if the Board had not proved by a preponderance of the evidence that dismissal was required. In light of the consistently negative evaluations of plaintiff's teaching performance, the determination that plaintiff's inability to comply with the requirements of the notices to remedy constituted cause for dismissal does not appear unreasonable or arbitrary and is thus not contrary to the manifest weight of the evidence. *Combs v. Board of Education* (1986), 147 Ill. App. 3d 1092, 1103.

■ Plaintiff next argues that the dismissal hearing was impermissibly flawed because the Board improperly sent a book of evidentiary materials to the hearing officer three days before the first hearing date. Plaintiff contends that the hearing officer's consideration of the evidence prior to the hearing unduly influenced him against her and deprived her of her due process right to a fair and impartial hearing. Prior to the hearing, the Illinois State Board of Education sent the hearing officer a copy of the notice of charges and bill of particulars. Plaintiff later filed a motion to dismiss the charges, and on April 21, 1986, three days before the hearing, the Board sent the hearing officer its response to the motion. The letter noted that a copy of the "Notice of Charges, Bill of Particulars and Hearing" was enclosed. Also enclosed was a notebook (the book), containing the notices to remedy, memoranda regarding the notices, notes of observation, and evaluations. Plaintiff was also sent a copy of the book before the hearing. The notice of charges and bill of particulars, with the book attached, were admitted into evidence by stipulation at the beginning of the hearing on April 24, 1986.

On the twelfth day of the hearing, July 14, 1986, the hearing officer, in discussing the admissibility of other exhibits, asked plaintiff if she was aware that he had received the book prior to the beginning of the hearing. He stated that being able to see the evidence before the hearing was advantageous because he was "able to get a little input about what the hearing was going to be about." Plaintiff indicated that she had not known the hearing officer had the book, but stated that she would not object because most of it had been testified to by then. Later that day, however, plaintiff filed a motion for a mistrial based on the hearing officer's consideration of the book before the hearing. The motion for mistrial was denied.

While plaintiff cites no cases which address the issue of whether a hearing officer's receipt of evidentiary materials before a hearing violates due process rights, the Board notes several cases which hold that

an adjudicator's possession of information about the subject matter of a hearing does not in itself result in deprivation of the right to a fair hearing. In *Grissom v. Board of Education* (1979), 75 Ill. 2d 314, the Illinois Supreme Court held that a teacher was not denied a fair and impartial hearing before a school board even though the school board conducted the investigation leading to dismissal. Relying on the United States Supreme Court cases of *Hortonville Joint School District No. 1 v. Hortonville Education Association* (1976), 426 U.S. 482, 49 L. Ed. 2d 1, 96 S. Ct. 2308, and *Withrow v. Larkin* (1975), 421 U.S. 35, 43 L. Ed. 2d 712, 95 S. Ct. 1456, the *Grissom* court held that mere familiarity with the facts of a case does not disqualify a decision maker without a showing that he is not capable of judging a particular controversy fairly on the basis of its own circumstances. (*Grissom*, 75 Ill. 2d at 320.) Likewise, the court in *Fender v. School District No. 25* (1976), 37 Ill. App. 3d 736, stated: "Absent facts demonstrating that a board's prehearing involvement foreclosed a fair consideration of evidence presented at the hearing, a due process violation is not shown." *Fender*, 37 Ill. App. 3d at 744.

In this case, there is no indication that the hearing officer's consideration of the book and consequent familiarity with certain facts precluded his fair consideration of the evidence presented at the hearing. To the contrary, in denying the motion for a mistrial, he stated that he intended to demonstrate the personal qualities of honesty, integrity, and impartiality. It is true that dismissal procedures have changed since the cases cited above were decided so that school boards no longer assume both investigative and adjudicative roles in dismissal cases. Even so, we believe that similar considerations should apply to the present procedure where there is even less chance of bias due to the singular function of the hearing officer. Since plaintiff has not shown that the hearing officer's consideration of the book before the hearing resulted in prejudice to her, we find no reversible error.

Although plaintiff claims that the Board improperly communicated with the hearing officer a second time when the board attached to its reply brief copies of previous hearing officer decisions, this contention has not been preserved for review. Plaintiff did not object to the attachments when they were sent to the hearing officer, nor did she raise this issue in the trial court. As such, the issue has been waived. *Board of Trustees v. Washburn* (1987), 153 Ill. App. 3d 482, 487.

■ Plaintiff's final area of argument concerns her request for medical disability leave. She contends that the hearing officer applied the wrong standard of proof to her claim of disability, that the medical evidence supporting her claim was undisputed, and that once she re-

quested a medical leave and submitted Dr. Kayton's letter, the Board was deprived of jurisdiction to dismiss her.

Section 10—22.4 of the School Code (Ill. Rev. Stat. 1985, ch. 122, par. 10—22.4) does provide that temporary mental or physical incapacity to perform teaching duties is not cause for dismissal. Likewise, section 24—13 of the Code states that "contractual continued service status of a teacher is not affected by *** temporary incapacity." (Ill. Rev. Stat. 1985, ch. 122, par. 24—13.) Neither of those sections, however, prohibits dismissal of a teacher for any other cause set forth in section 10—22.4, such as incompetency, cruelty or immorality, if such cause is unrelated to a disability, and plaintiff can point to no other section of the Code preventing a school board from dismissing a teacher for such reasons while a request for disability leave is pending. This court in fact recently upheld the dismissal of a teacher who failed to comply with remediation requirements despite her request for leave of absence due to temporary mental incapacity. (*deOliveira v. State Board of Education* (1987), 158 Ill. App. 3d 111, 122.) As the Board notes, if temporary disability deprived a board of education of jurisdiction to dismiss a teacher, a teacher who committed a crime of immorality could not be dismissed if, prior to initiation of dismissal proceedings, he or she became medically incapacitated. Since this result is clearly not contemplated by the School Code, plaintiff must show that her mental health problem, as raised in her motion to dismiss, was the cause of her inability to meet the requirements of the notices to remedy. *deOliveira*, 158 Ill. App. 3d at 122.

The proper standard of proof on this issue is the preponderance of the evidence standard. (*Board of Education v. State Board of Education* (1986), 113 Ill. 2d 173, 189; *deOliveira*, 158 Ill. App. 3d at 127.) Plaintiff argues here that she was held to a higher standard of proof. In his opinion, the hearing officer did state that he was not convinced beyond a reasonable doubt that had plaintiff not known she was nearing the end of her remediation period she would have visited Dr. Kayton or requested a medical leave. Although that statement does suggest the hearing officer applied an incorrect standard, later in his decision he applied the correct standard. In denying plaintiff's motion to dismiss, wherein the issue of plaintiff's disability was raised, the hearing officer found that plaintiff had not established the allegations in the motion by a preponderance of the evidence. The later statement demonstrates that the hearing officer was aware of the proper standard of proof on this issue and did apply that standard, thus correcting any previous error. See *deOliveira*, 158 Ill. App. 3d at 128.

▮▮ In denying the motion to dismiss, the hearing officer appar-

ently determined that plaintiff's condition did not prevent her from complying with the notices to remedy. Plaintiff argues that that finding was inappropriate. Relying on *Kloss v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 252, she contends that it was unreasonable for the Board not to have required her to undergo an examination, as boards of education are empowered to do by section 24—5 of the School Code (Ill. Rev. Stat. 1985, ch. 122, par. 24—5). In *Kloss*, a police officer was dismissed after a bizarre incident in which he threatened to kill himself and others. Although the supreme court found there was cause to discharge the officer, the court found unusual circumstances which raised the strong possibility that the isolated incident stemmed from an inadvertently induced adverse reaction to medication and that it was unreasonable to discharge the officer without further examination of the medically related aspects of the episode. (*Kloss*, 96 Ill. 2d at 259.) *Kloss* does not require reversal here. Plaintiff's behavior is not comparable to that in *Kloss*, where the police officers who responded to the incident considered the plaintiff's behavior so irrational that they did not arrest him but instead took him to a hospital. (*Kloss*, 96 Ill. 2d at 258.) Moreover, as will be discussed below, the hearing officer here had more information on which to evaluate the effect of plaintiff's mental health on her ability to comply with the notices.

Finally, plaintiff argues that the evidence of her disability is undisputed. She contends that Dr. Kayton's testimony that she was severely depressed and unable to comply with the notices to remedy was unrefuted, but that the hearing officer gave Dr. Kayton's opinion no weight and relied instead on the lay opinions of her supervisors. She also maintains that Dr. Kolbaba's testimony does not conflict with Dr. Kayton's opinion because Dr. Kolbaba was concerned with any organic medical problems, not her mental state.

After reviewing Dr. Kayton's testimony, there does appear to be some conflict between his description of how plaintiff would have been affected during the remedial period and what the other witnesses actually observed. Dr. Kayton testified that someone as depressed as plaintiff would be unable to take positive steps to help herself. Although plaintiff ultimately was unable to comply with the notices to remedy, she did take such steps as requesting on her own initiative to view video tapes on effective teaching, to observe another teacher's classes, and to take a teacher effectiveness training course. She did view the tapes, and during the fall of 1985, she took classes towards her master's degree and took the teacher effectiveness course.

In addition, the Board notes that plaintiff's supervisors observed

nothing which suggested her health prevented her from complying with the notices. Plaintiff had reported some health problems to the school nurse near the time when the first notices were issued, but when she was requested to advise Dr. Stevens if she had a health problem which would interfere with her ability to comply, she did not respond because she did not believe her mental health was an issue at the time. Instead, plaintiff waited until her scheduled observations were nearly completed before seeking psychiatric help. The Board also points to medical evidence in support of its argument that plaintiff's depression problem did not prevent compliance with the notices to remedy. Dr. Kolbaba reported throughout the remedial period that plaintiff was medically fit to perform her teaching duties. While Dr. Kolbaba is an internist and not a psychiatrist, and he did diagnose plaintiff as depressed in February 1985, he prescribed medication which helped plaintiff's condition, and, on August 27, 1985, he reported that plaintiff was no longer depressed. He did recommend that plaintiff see a psychiatrist for follow-up care, but his report conflicts with Dr. Kayton's testimony that plaintiff was depressed throughout the remedial period.

It thus appears that Dr. Kayton's opinion of plaintiff's condition during the remedial period was not entirely uncontradicted. Moreover, the hearing officer was aware that Dr. Kayton had based his recommendation that plaintiff take disability leave on what plaintiff had told him during the first two office visits and on a short phone call to Dr. Kolbaba. Faced with this evidence, the hearing officer determined that plaintiff had not proved by a preponderance of the evidence that her depression prevented her from complying with the notice to remedy. In reviewing this determination, it is not this court's role to resolve conflicting evidence, but rather to decide if the conclusion reached was contrary to the manifest weight of the evidence. (*Grissom v. Board of Education* (1979), 75 Ill. 2d 314, 332-33.) A decision is contrary to the manifest weight of the evidence only when the opposite conclusion is clearly evident or the decision appears to be unreasonable, arbitrary or not based on the evidence. (*Combs v. Board of Education* (1986), 147 Ill. App. 3d 1092, 1103.) Because the hearing officer's determination here does not appear arbitrary or unreasonable, we affirm.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

INGLIS and REINHARD, JJ., concur.