WILLIAM JONES, Ex'r of the Estate of Gerard Kloss, Plaintiff-Appellant, v. BOARD OF FIRE AND POLICE COMMISSIONERS OF THE VILLAGE OF MUNDELEIN *et al.*, Defendants-Appellees.

Second District   No. 2—89—1166

Opinion filed October 26, 1990.—Rehearing denied December 4, 1990.

Dunlap & Brown, Ltd., of Libertyville (Robert W. Brown, of counsel), for appellant.

Rosing, Magee & Applehans, Ltd., of Waukegan (Charles F. Marino, of counsel), for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, William Jones, executor of the estate of Gerard Kloss, appeals from an order of the circuit court of Lake County affirming on administrative review the decision of the Board of Fire and Police Commissioners of the Village of Mundelein (Board), defendant, which found that Gerard Kloss had violated certain rules and regulations of

the Board and that this violation was cause for his discharge as a Mundelein police officer.

We briefly review the procedural history of this cause. On October 10, 1978, the chief of police of the Village of Mundelein filed charges against Gerard Kloss, a 10-year member of the Mundelein police department, alleging that Kloss violated certain rules and regulations of the Board on October 9, 1978. The substance of the charges was that Kloss, while off duty and in his apartment, yelled, kicked, screamed profanities and threatened to kill a police officer while aiming a gun at him. Following a hearing, the Board found Kloss had violated its rules and regulations and discharged him as a police officer. On administrative review, the circuit court reversed the Board and found that the Board's decision of guilt as to the charges and cause for discharge was against the manifest weight of the evidence.

On appeal to this court, we held that the circuit court had erred in finding that the Board's decision on the guilt of the charges was contrary to the manifest weight of the evidence. (*Kloss v. Board of Fire & Police Commissioners* (1982), 108 Ill. App. 3d 8, 438 N.E.2d 685.) A majority of the court further held, nevertheless, that Kloss' misconduct was unrelated to the requirements of service and, therefore, did not constitute sufficient cause for discharge. (108 Ill. App. 3d at 13-14, 438 N.E.2d at 689.) The court remanded for appropriate disciplinary action short of discharge. 108 Ill. App. 3d at 14, 438 N.E.2d at 690.

On further appeal to the Illinois Supreme Court in *Kloss v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 252, 449 N.E.2d 845, the supreme court held: "We agree with the circuit court that the record does not support a finding that plaintiff was guilty of wilful misconduct; accordingly, the board's determination was contrary to the manifest weight of the evidence." (96 Ill. 2d at 258, 449 N.E.2d at 849.) In addition to that determination, the court decided that the appellate court also incorrectly held that Kloss' "behavior and the type of discipline selected were unrelated to the needs of the police force or the village of Mundelein." (96 Ill. 2d at 259, 449 N.E.2d at 849.) The court also agreed with Kloss' contention that the Board's decision to discharge him was arbitrary and unreasonable because it was made without the benefit of more complete medical evidence and without regard to his otherwise unblemished record. 96 Ill. 2d at 259, 449 N.E.2d at 849.

The dispositional paragraph of the supreme court's decision recites as follows:

"For the reasons stated, the judgment of the appellate court

is reversed. In the circumstances presented here we must also vacate the circuit court's order reinstating plaintiff without requiring any further inquiry into his capacity to serve. We consider it more appropriate to remand the matter to the board so that it may, on the basis of further action not inconsistent with this opinion, determine a proper disposition. *Cf. Kreiser v. Police Board* (1977), 69 Ill. 2d 27, 31; *Basketfield v. Police Board* (1974), 56 Ill. 2d 351, 361." (96 Ill. 2d at 260, 449 N.E.2d at 849.)

The mandate in the cause was issued on June 16, 1983.

On remand, Kloss initially filed a motion for declaratory judgment and injunctive relief, contending that the Board lost jurisdiction because no hearing was held within 30 days after issuance of the supreme court's mandate. The motion was denied. That decision was affirmed on appeal to this court in *Jones v. Board of Fire & Police Commissioners* (1984), 127 Ill. App. 3d 793, 469 N.E.2d 393. Kloss died on December 7, 1983, during the pendency of this appeal, and William Jones, the executor of his estate, was substituted for him.

Once again proceedings began before the Board on the remandment from the supreme court's decision. The parties apparently agreed that interpretation of the supreme court's decision required the Board to allow medical evidence regarding the incident on October 9, 1978, as a continuation of the original hearings begun in November 1978. These hearings were conducted from September 25, 1986, through December 16, 1986. As only one of the present board members had served on the Board at the original hearings, the new board members, by agreement of the parties, also read the transcript of the original proceedings.

The Board heard testimony from five treating physicians and two psychiatrists. Dr. Francis Jeffords had treated Kloss for approximately eight years from 1970 to 1978. Dr. Jeffords testified that in 1970 Kloss had a fatty liver which is commonly associated with excessive drinking of alcohol. Dr. Jeffords advised Kloss of this situation. While treating Kloss, Dr. Jeffords prescribed Darvon, Tylenol with codeine, Motrin, Talwin, Elavil and Tranxene.

Dr. John Ring testified that in 1968 Kloss admitted that he was abusing alcohol. In November 1968, Dr. Ring prescribed Librium for Kloss. Dr. Ring testified that it was his practice to tell patients not to mix tranquilizers, like Librium, and alcohol and that he would have made Kloss aware of the dangers of mixing prescription drugs and alcohol. In February 1971, Dr. Ring diagnosed Kloss as having cirrhosis of the liver. Dr. Ring continually told Kloss to stop drinking alcohol and finally told Kloss, "Jerry, you're killing yourself."

Dr. James McClure testified that he examined Kloss the morning after the incident. At that time, Kloss was alert, oriented and aware of what happened the previous night. Dr. McClure's admitting diagnosis was that Kloss had an acute psychotic break. Dr. McClure further stated that a person who took Librax, Tagamet, Neo-Synephrine, Dimetapp and Robinul and resumed drinking alcohol after a two-year abstinence would "get drunk quicker."

Dr. John Hofstra treated Kloss after the incident. Dr. Hofstra thought the incident was the result of a dissociative episode. According to Dr. Hofstra, Kloss had a problem with drinking. Dr. Hofstra thought Kloss might be capable of returning to work after the incident. However, he said, returning to work was going to be a problem.

Dr. Raymond Gavery diagnosed Kloss on September 19, 1978, as having a peptic ulcer and prescribed Tagamet, Librax and Robinul. Although Dr. Gavery was unable specifically to recall warning Kloss, it was his practice to warn patients of the potential dangers of mixing medication with alcohol. After the incident, Dr. Gavery concluded that Kloss was unable to continue working as a police officer and stated that Kloss' "mental condition was getting to a point where we felt he really wasn't fit to be a policeman."

Dr. John Adams, a psychiatrist retained by the Board, opined that Kloss' actions were the product of imprudent behavior and that the developments of the incident were the product of behavior that Kloss could have averted. Dr. Adams, whose opinions were based solely on Kloss' medical records, stated that Kloss knew or should have known of the consequences of mixing alcohol with the medication he was taking at the time. Dr. Adams based his opinion on the following factors. First, Kloss had a long and intimate association with alcohol, and Kloss was an intelligent person. Next, Kloss had been a member of Alcoholics Anonymous, which teaches the results of mixing alcohol with drugs. Further, Kloss was an experienced police officer. Also, Kloss had been taking the medication for weeks and did not have any adverse reactions; the reaction only happened when he mixed the medication with alcohol. Dr. Adams also concluded that Kloss was unable to return to work as a police officer after the incident.

Dr. Ronald Baron, a psychiatrist retained by plaintiff, testified that on the night of the incident Kloss was severely mentally impaired and did not realize the significance of what he was doing. According to Dr. Baron, Kloss suffered an acute psychotic reaction known as delirium. Dr. Baron stated that Kloss had told him no doctors had warned Kloss about mixing medication and alcohol. Although Kloss knowingly resumed drinking alcohol, Dr. Baron stated that Kloss

thought the beer would not affect him. Although Dr. Baron agreed that a person with Kloss' background would be aware of the dangers of mixing alcohol with prescription medication, Dr. Baron thought Kloss believed it was safe to mix based on Kloss' own experience. Dr. Baron opined that on one level Kloss knew it was dangerous to mix drugs and alcohol. However, on another level—his experience of doing it before without effects—Kloss thought it was safe to mix. Dr. Baron agreed that it was standard medical practice to warn patients not to mix alcohol with certain medications. Dr. Baron also admitted that Kloss may not have been able to serve as a police officer after the incident because Kloss "was reaching the end of his rope psychologically."

In addition to the medical testimony, the Board also heard the testimony of Mrs. Debra Kloss, Kloss' widow, who was Kloss' fiancee at the time of the incident. For the period Mrs. Kloss had known Kloss, she had not seen him drink alcohol until the night of the incident. She also knew that he was attending Alcoholics Anonymous meetings. Mrs. Kloss testified that Kloss seemed to be in complete control of his decision to start drinking again. When Kloss first started drinking she asked, "Why start now?" Kloss replied that he could handle it. When Kloss had the second drink, she again questioned him, and he said it was no problem. Although Mrs. Kloss testified that in her opinion Kloss was not intoxicated, Kloss asked her to drive and while in the restaurant Kloss "became quite friendly with just about everybody there, like everybody was his best friend."

The Board also received into evidence several letters commending Kloss for his actions as a police officer. These letters commended Kloss for finding a witness to an accident, preventing a car from rolling into a busy highway, helping a distraught mother and notifying a church that its doors were unlocked.

In a six-page order, the Board found, in pertinent part, that "[c]onsidering the medically related aspects of this case, [Kloss'] return to alcohol, particularly while taking prescription drugs having narcotic or sedative effects, cannot be considered as an acceptable excuse for his behavior in violation of this Board's Rules and Regulations." The Board further found that "cause existed for the discharge" and Kloss "was not capable of continuing to serve as a police officer." The circuit court on administrative review affirmed these findings.

Plaintiff raises the following issues on appeal: (1) whether the Board's decision that found Kloss' actions were caused solely by the consumption of alcohol, which Kloss should have known would have a

synergistic effect when consumed with his taking of prescription drugs, was against the manifest weight of the evidence; (2) whether the Board's decision to discharge was contrary to the manifest weight of the evidence; (3) whether the Board was biased; and (4) whether the Board failed to follow the mandate of the supreme court which precluded discharge.

■■ ■ In considering the points raised by plaintiff on appeal and the proceedings following remand from the supreme court's decision, we necessarily must examine the supreme court's resolution of the issues before it and the disposition of those issues. The parties proceeded on remand to the Board to relitigate both the issues of guilt of the charges against Kloss and cause for his discharge. We do not believe that this was the correct procedure pursuant to the mandate of the supreme court, which is as follows:

> "It is the decision of this court that the order of the Appellate Court for the Second District be REVERSED insofar as it determined that the Circuit Court erred in finding the Board's decision was contrary to the manifest weight of the evidence; and that the order of the Circuit Court of Lake County be VACATED insofar as it reinstated Gerald [*sic*] Kloss without further inquiry into his capacity to serve as a police officer. This cause is remanded to the Board so that it may avail itself of the opportunity to take further evidence to determine a proper disposition of this matter."

A careful examination of the opinion of the supreme court reveals that the court specifically agreed with the circuit court that the record in the initial hearing does not support a finding that Kloss was guilty of wilful misconduct, the standard employed in evaluating Kloss' conduct, and concluded that the Board's determination was contrary to the manifest weight of the evidence. (*Kloss*, 96 Ill. 2d at 258, 449 N.E.2d at 849.) The dispositional portion of the opinion (*Kloss*, 96 Ill. 2d at 260, 449 N.E.2d at 849), accordingly, reversed our appellate court opinion which was to the contrary. Nevertheless, the supreme court vacated the circuit court's order which had reinstated Kloss as a police officer "without requiring any further inquiry into his capacity to serve." It is apparent that the supreme court found that reinstatement would be inappropriate without further inquiry into Kloss' capacity to serve because of evidence in the record of irrational behavior and Kloss' "potential psychological problems" which had occurred while the hearings were being scheduled. *Kloss*, 96 Ill. 2d at 259, 449 N.E.2d at 849.

In view of the supreme court's findings for Kloss on the initial

guilt stage of the two-step process of reviewing an administrative agency's decision, there was no authority for the Board on remand to reconsider his guilt of the charges against him and to proceed to determine cause for discharge. The sole purpose of remandment was for the Board to determine Kloss' "capacity to serve." If a cause is remanded, the circuit court, and in this case the Board, can take only such action which conforms to the judgment of the court of review. *PSL Realty Co. v. Granite Investment Co.* (1981), 86 Ill. 2d 291, 305, 427 N.E.2d 563; *Gluth Brothers Construction, Inc. v. Union National Bank* (1989), 192 Ill. App. 3d 649, 657, 548 N.E.2d 1364.

We are not unmindful that the supreme court opinion, in discussing the issue of whether Kloss' behavior and the requirements of discipline selected were unrelated to the needs of the police force or the Village of Mundelein, may have misled the parties into believing that the issues of guilt of the charges and cause for discharge may have been still viable on remand. However, the supreme court's consideration of that issue, although unnecessary to resolve the case, was warranted because of our erroneous conclusion to the contrary in our appellate court opinion.

■ While the parties to this appeal proceeded contrary to the mandate and have not raised this issue on appeal except to respond to our inquiry at oral argument, we are obligated to interpret and follow the mandate of our supreme court in its prior opinion. Consequently, we do not address the issues raised or the Board's motion to strike certain portions of plaintiff's brief taken with the case but reverse the order of the circuit court affirming the Board.

Had the Board proceeded in accordance with the opinion of the supreme court and held a hearing to determine Kloss' "capacity to serve" upon the filing of the mandate in the circuit court on June 20, 1983, a decision could have been rendered by the Board on that issue. The Board, however, did not do so, and Kloss died on December 7, 1983. Inasmuch as the original charges against Kloss were not proved, Kloss would have been entitled to reinstatement by the Board as a police officer *unless* he was found not to have the capacity to serve. Because no proceedings were undertaken by the Board prior to Kloss' death to determine this issue as directed by the supreme court, Kloss was a police officer at the time of his death.

While we are fully cognizant from facts in this record of the hearings in 1986 that Kloss may not have had the capacity to serve as a police officer at some point in time after the incident on October 9, 1978, this limited evidence was elicited only incidental to the erroneous continuation of the hearing on the original charges against Kloss

and was not an issue raised or decided in the Board hearings. We, therefore, find that, because Kloss was entitled to reinstatement as a police officer unless the Board found he did not have the capacity to serve, and the Board having made no such finding prior to his death on December 7, 1983, Kloss was a police officer at the time of his death and was entitled to back pay and other benefits of a Mundelein police officer at that time.

The judgment of the circuit court of Lake County is reversed.

Reversed.

WOODWARD and DUNN, JJ., concur.