(No. 54855.—

ROBERT W. SUTTON, Appellee, v. THE CIVIL SER-VICE COMMISSION *et al.*, Appellants.

*Opinion filed June 18, 1982.*

GOLDENHERSH, J., dissenting.

Tyrone C. Fahner, Attorney General, of Springfield (Edward M. Kay, Assistant Attorney General, of Chicago, of counsel), for appellants.

Nehrt, Sachtleben & Fisher, of Chester (Edward J. Fisher and David R. Smith, of counsel), for appellee.

JUSTICE SIMON delivered the opinion of the court:

The Department of Corrections filed the following charges in a discharge proceeding against plaintiff, Robert W. Sutton, a program supervisor at the Menard Correctional Center:

> "Robert Sutton, employed by the Department of Corrections in the position of Activity Program Supervisor, is discharged for cause, that cause being conduct unbecoming a state employee, in that: On May 2, 1979 Mr. Sutton approached resident inmate Andrew Englesman (#A—58057) at the Menard Correctional Center and asked inmate Englesman how much it would take (money) to get Warden Greer 'killed off.'
>
> Mr. Sutton also discussed with Englesman what location at the facility would be a good area for the above act to take place. This solicitation of an act of violence to be performed by a resident inmate against Warden Greer was admitted to by Mr. Sutton to Polygraph Examiner Dennis J. Smith and Internal Investigator Robert Verges on May 18, 1979."

After a hearing, the Civil Service Commission's hear-

ing officer recommended that plaintiff be discharged; the hearing officer found that Sutton made all the statements attributed to him, and that although he did not actually intend for anyone to harm the warden, his statements were a serious indiscretion justifying discharge. The Commission adopted the hearing officer's recommendation; it found that the charges preferred had been proved and that Sutton's discharge was warranted. Sutton instituted an administrative review proceeding in the circuit court of Randolph County, and that court reversed the Commission's order and directed Sutton's reinstatement. The appellate court, in a split decision, affirmed the circuit court (94 Ill. App. 3d 134), and the State was granted leave to appeal to this court.

Our attention is directed by this appeal to two issues: First, were the Commission's findings of fact, as both the circuit and appellate courts held, contrary to the manifest weight of the evidence? Second, if the circuit and appellate courts erred in so holding, was the Commission's conclusion that the plaintiff's conduct warranted discharge arbitrary, unreasonable or unrelated to the requirements of the service? See *Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547.

Three witnesses testified at the Civil Service Commission hearing regarding the statements of the plaintiff which led to his discharge. Other witnesses testified to the plaintiff's good character, his reputation as a peaceful, law-abiding citizen, and the meritorious service he had rendered in the Department of Corrections.

Inmate Englesman, who informed the prison authorities of the incident, was assigned to work in the recreational program of which plaintiff was in charge. He had gang associations and was serving a 6- to 20-year term for armed robbery. He testified that the plaintiff approached him and asked him how much it would cost to kill the war-

den. Unsure that the plaintiff was serious, he jokingly responded it would take a pack of cigarettes. The plaintiff commented that a certain location in the penitentiary would be a good place to do it and inmate Englesman agreed. After thinking about the conversation for two days and discussing it with a person he refused to identify, Englesman decided to report it to the prison authorities.

The second witness was Dennis J. Smith, an employee of the Department of Law Enforcement; he interviewed the plaintiff after the inmate informed the authorities of the plaintiff's statements. Smith testified that the plaintiff stated he had been upset for a couple of weeks over threats by gang members and conflicts with the warden over his work. When Englesman came into his office one afternoon, he asked Englesman, without thinking, how much it would cost to get the warden killed. Smith asked the plaintiff what the inmate's reply was, and he said he couldn't recall. At that point, Smith called in another investigator and the plaintiff made the same admissions in his presence. Smith also testified that the plaintiff said that he did not intend to go through with the act.

Sutton himself testified. He admitted receiving a memorandum from the warden reprimanding him over his failure to carry on a boxing program in the prison and said that this angered him. While he was reading the memorandum Englesman came into his office and told him that some of the gang leaders in the prison had a hit out on the plaintiff for his life. A few minutes later he asked the inmate what it takes to get someone killed off in the prison and the inmate replied, "something about a pack of cigarettes or two packs." The plaintiff's testimony was that he did not remember ever mentioning the warden or his name. The plaintiff explained his remark to Englesman by the feelings of frustration and anger he was experiencing at the time. Plaintiff's testimony was that he made the statement to the inmate without thinking, just as he might speak about his

difficulties to a fellow employee.

Although not in direct conflict, there were variations between Sutton's testimony and that of inmate Englesman. Englesman testified that Sutton specifically referred to the warden and that he commented that a particular location in the prison would be the best place to kill him. Sutton testified that he did not remember ever having said those things. The Commission apparently believed Englesman, and that belief was not contrary to the manifest weight of the evidence. This is particularly the case in view of the admonition of the Administrative Review Act that the "findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct" (Ill. Rev. Stat. 1979, ch. 110, par. 274). *Basketfield v. Police Board* (1974), 56 Ill. 2d 351, 358.

The testimony of Smith, the Department of Law Enforcement investigator who interviewed Sutton, corroborated Englesman's testimony that Sutton specifically mentioned the warden. Thus, the Commission was fully justified in believing Englesman over Sutton on that point. Smith's corroboration also lent more credibility generally to Englesman's testimony and less to Sutton's, since it appeared that Sutton was intentionally omitting substantial portions of what he had said. The Commission, therefore, was justified in believing that Sutton had spoken to Englesman about which location in the prison would be a good place to kill the warden. But, had the conversation ended with Englesman's response that it would take a pack of cigarettes, the conversation up to that point would have been no less improper for a State employee in the prison system.

Sutton argues, however, that the charge with which he was faced was "solicitation of an act of violence" to be performed against Warden Greer and that the hearing officer concluded that Sutton was not soliciting a murder, but instead was giving vent to his feelings of anger and frustration. Sutton thus contends that the charge instituted against

him was not proved. It is clear from a reading of the charge that the complaint against Sutton was not criminal solicitation. By using the words "solicitation of an act of violence" in the charge, the Department of Corrections was merely referring in a descriptive way to the statements of Sutton which both Smith's and Englesman's testimony established. The charge against Sutton was conduct unbecoming a State employee, and the evidence was sufficient to prove that charge.

The more difficult question is the proper sanction for Sutton's transgression. Is discharge too harsh for what Sutton claims was his thoughtlessness and his "ordinary office banter" with one he regarded almost as a fellow employee?

We had occasion recently to discuss the standards which should guide us in determining whether there is sufficient cause for discharge of a State employee. In *Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 551, we said:

> "Due to the paucity of specific guidance, several appellate decisions in this State have held that the question of whether there is sufficient cause for discharge is generally for the agency to determine. [Citations.] Indeed, even the appellate court in this case recognized 'the substantial deference that must be given to the Commission's ruling on the question of cause.' [Citation.] Some appellate opinions have found administrative penalties too severe and subject to reduction. [Citations.] These cases, however, make it clear that the Commission's determination to discharge might be overturned only if its decision is arbitrary, unreasonable, or unrelated to the requirements of service."

Cause for discharge has been defined as "some substantial shortcoming which renders continuance in his office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for his not longer occupying the place." *Fantozzi v. Board of Fire & Police Commissioners* (1963), 27 Ill. 2d 357, 360.

Sutton asks this court to consider his years of exemplary service in the Department, the extenuating circumstances of his frustration after being reprimanded, which caused him to make the statements attributed to him, and the fact that these statements were made thoughtlessly. The question, though, is not whether this court would decide upon a more lenient sanction than discharge were it to determine initially what discipline would be appropriate. Nor is it whether this court would conclude in view of the mitigating circumstances suggested by Sutton that a different penalty would be more appropriate. The question is whether, in view of the circumstances presented, this court can say that the Civil Service Commission, in opting for discharge, acted unreasonably or arbitrarily or selected a type of discipline unrelated to the needs of the service.

Common sense and experience tell us that anyone employed in a prison system is working in a volatile atmosphere. A suggestion by a guard to a convict which presents the possibility of the assassination of the prison warden, even if made in a joking or thoughtless manner, is obviously a statement fraught with potential for dangerous consequences. By the time the convict who heard it gets through relaying it to his fellow prisoners, it may be so completely distorted that instead of other convicts regarding it as "office banter," as Sutton claims his statement was, they may conclude that guards in the prison are plotting to assassinate the warden. It seems clear that, to establish and maintain discipline in a penitentiary, the warden must command respect and be looked upon as a figure providing leadership for the institution. A remark such as Sutton's undermines the authority that a prison warden must have if adequate discipline is to be preserved. This case is unlike *Fantozzi v. Board of Fire & Police Commissioners* (1963), 27 Ill. 2d 357, and *Kreiser v. Police Board* (1977), 69 Ill. 2d 27. This court held, in the former case, that the filing of a voluntary petition in bankruptcy and, in the latter, that taking approxi-

mately an extra hour for lunch without authority and covering this up by giving a false oral statement to a superior officer were not sufficiently substantial instances of misconduct by a police officer or so related to the performance of duty as to call for the maximum sanction of discharge.

Neither can Sutton's conduct be excused, as he suggests it should, by viewing it simply as some friendly office banter. Although Englesman was assigned to duty in the recreation department, he was neither an employee of that department nor a co-employee of Sutton. Contrary to what Sutton contends, it could be regarded as an aggravating factor reflecting on the soundness of Sutton's judgment that Sutton did not distinguish between the type of conversation that would be acceptable with a fellow employee and conversation that would be appropriate with an inmate, although we do not believe that statements of the type made by Sutton could be sanctioned even if communicated to a fellow employee.

For these reasons, regardless of what decision we might have reached had we initially determined what sanction was appropriate, it would be an unwarranted reflection on the judgment of the Civil Service Commission for this court to overturn the discipline it decided upon in this case. In view of the substance of Sutton's statements and the person to whom they were directed, his conduct was clearly irresponsible. Even if he had been expressing only feelings of hostility and resentment, he demonstrated that he lacked the self-control of his own anger and frustrations and the ability to think before he acted required for employment in as sensitive an environment as a penitentiary. As the hearing officer stated in expressing his conclusions, Sutton showed "a monumental error of judgment." We cannot conclude that the Civil Service Commission, in directing discharge, acted in an unreasonable or arbitrary manner or that its discharge order was unrelated to the needs of the service.

The judgments of the appellate and circuit courts are reversed, and the Commission's order of discharge is affirmed.

*Judgments reversed;*
*order affirmed.*

JUSTICE GOLDENHERSH, dissenting:

I dissent. I agree with the circuit and appellate courts that the occurrence upon which this charge was based was a single blot on an otherwise excellent record and that discharge is not warranted. The plaintiff has performed his duties well, and the importance of this single momentary aberration at a time of anger and frustration has been blown out of proportion. In view of the fact that three years have passed since the alleged occurrence, no further period of suspension is warranted, and I would order his immediate reinstatement.