UYLESSEE WILLIAMS, Plaintiff-Appellant, v. THE SECRETARY OF STATE MERIT COMMISSION *et al.*, Defendants-Appellees.

Fourth District   No. 4—86—0365

Opinion filed December 30, 1986.—Rehearing denied January 28, 1987.

John L. Swartz and Herman G. Bodewes, both of Giffin, Winning, Lindner, Cohen & Bodewes, P.C., of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and William D. Frazier, Assistant Attorney General, of Chicago, of counsel), for appellees.

PRESIDING JUSTICE SPITZ delivered the opinion of the court:

Plaintiff, Uylessee "Pete" Williams, appeals from an order of the circuit court of Sangamon County, sitting in administrative review (Ill. Rev. Stat. 1983, ch. 110, par. 3—101 *et seq.*), which affirmed the decision of defendant, the Secretary of State Merit Commission, discharging plaintiff from his position with defendant, the Bank Sales Division of the Secretary of State. Plaintiff contends on appeal that the circuit court erred in affirming the Merit Commission's decision and, alternatively, that the sanction of discharge is too severe on the facts of this case. For the reasons that follow, we affirm the judgment of the circuit court.

In December of 1981, plaintiff was temporarily employed by the Secretary of State's office to work in the CRT section of its Bank Sales Division (Bank Sales). Plaintiff was subsequently assigned to the data entry section of the State Library. Then in December of 1982, plaintiff was transferred back to the CRT section of Bank Sales.

On September 2, 1983, five female Bank Sales employees filed complaints of sexual harassment against the plaintiff and a co-worker with the assistant administrator of Bank Sales. Afterward, the Secretary of State's office investigated the allegations. Then on September 12, 1983, the plaintiff and the co-worker that allegedly participated in the sexual harassment were provided with written charges of sexual harassment and were suspended pending discharge. On October 6, 1983, the director of Bank Sales initiated discharge proceedings against the plaintiff. Shortly thereafter, plaintiff received a letter informing plaintiff that he had been formally discharged. The 15 written charges relating to plaintiff's discharge consisted of incidents from February of 1983 to September of 1983, involving plaintiff's lewd, vulgar, and sexually suggestive comments, overtures and jokes, and his offensive physical actions and gestures, as alleged by the five female employees.

In accordance with the provisions of the Secretary of State Merit Employment Code, plaintiff appealed the discharge to the Merit Commission. A hearing was held before a Merit Commission hearing officer on November 28, 1983, and the following evidence was adduced. Testimony disclosed that the plaintiff worked in the CRT section of the Secretary of State's Bank Sales Division. The Bank Sales Division consisted of a large open area with offices located along two walls. Approximately 30 to 50 people worked at desks in the open area. The CRT section of Bank Sales is an open

alcove located between offices on one of the walls. The plaintiff was one of four employees that worked in the CRT section during the summer of 1983.

The Secretary of State called as witnesses the five female employees that filed complaints of sexual harassment against the plaintiff. The complainants all worked in the open area of the Bank Sales Division. Their duties frequently required them to go into the CRT section, where computers were located and the plaintiff worked. Each complainant testified to numerous incidents of sexual harassment by the plaintiff and a co-worker during the summer of 1983. In discussing these incidents, the complainants testified to occasions when the plaintiff: made "vulgar," sexually related comments to them; questioned them about their sexual activities; made offensive and sexually suggestive noises, gestures, and physical movements; made "vulgar" and offensive comments regarding their bodies and "sexual appearances"; made "lewd" sexual overtures; attempted to "grab" or touch parts of their bodies; and told "vulgar sex jokes." The complainants testified that a co-worker of plaintiff's in the CRT section often participated in the aforementioned incidents. The complainants stated that they found the plaintiff's comments and conduct upsetting and embarrassing. The complainants filed complaints against the plaintiff with the assistant administrator of Bank Sales on September 2, 1983. The complainants stated that they did not initially complain about the plaintiff's behavior because they did not believe anything would be done about it.

The Secretary of State also called George White, the assistant administrator of Bank Sales, to testify. White stated that on September 2, 1983, a female Bank Sales employee complained to him that the plaintiff had been making sexual comments to her. White asked the employee if any of her co-workers had similar complaints. The employee stated that there were, and on White's request, she subsequently brought three of her co-workers to White's office. White then asked the women to write their complaints against the plaintiff and he contacted the deputy director of Bank Sales.

The plaintiff then testified in his own behalf. He denied making any lewd, vulgar, or suggestive comments to the complainants. Further, plaintiff stated that he never engaged in any offensive conduct or attempted to touch or grab the complainants.

Plaintiff testified that his co-workers regularly engaged in vulgarity and explicit sexual conversation. He further testified that sexual and racial jokes were told by male and female employees on a daily basis. Plaintiff stated that the employees used such foul lan-

guage that he started a "cuss box." He explained that each person that used a "cuss word" had to deposit two cents into the box, and each person that told a "dirty joke" had to deposit a quarter. The money was used to purchase pizza at lunch. The plaintiff did not claim that the complainants were involved in any of the aforementioned activities. He did state, however, that four female co-workers, including two of the complainants had "sex magazines, which showed off the male anatomy" at work.

Plaintiff testified that he never received any complaints about his conduct from co-workers or supervisors until the day of his discharge. He further testified that he had never been disciplined by the Secretary of State's office prior to his discharge.

The plaintiff also called the director of Bank Sales, who testified that plaintiff had never been previously disciplined while working for the Secretary of State's office. In addition, the plaintiff called several co-workers who testified that they had not been sexually harassed by the plaintiff, nor had they heard him make sexually related comments or overtures to others in the office.

At the conclusion of the hearing, the hearing officer issued his findings and recommendations. The hearing officer found that one of the charges had not been proved, and that the remaining 14 charges had been partially proved, not warranting discharge. The hearing officer recommended remandment for further evidence to determine the severity of the disciplinary action that should be taken against the plaintiff. Thereafter, the Merit Commission reviewed oral, documentary, and written evidence presented at the hearing together with the record and findings of the hearing officer. The Merit Commission determined that one charge had not been proved but that the 14 remaining charges had been proved by a preponderance of the evidence and warranted immediate discharge. In making its determination, the Merit Commission noted that the charges proved were of a "sufficiently serious nature" so as to preclude the use of progressive corrective discipline by the Secretary of State.

Thereafter, plaintiff filed a complaint in the circuit court of Sangamon County pursuant to section 3—101 *et seq.* of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 3—101 *et seq.*), seeking administrative review of the Merit Commission's decision. Subsequently, the circuit court affirmed the decision of the Merit Commission. Plaintiff then filed a motion for reconsideration which was denied. Plaintiff now appeals from the judgment of the circuit court, affirming the decision of the Merit Commission, and from the denial of his motion for reconsideration.

■■ ■ A court's scope of review of an administrative agency's decision regarding discharge involves a two-step process. (*Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 426 N.E.2d 885.) First, the reviewing court must determine whether the agency's findings of fact are contrary to the manifest weight of the evidence. (85 Ill. 2d 547, 550, 426 N.E.2d 885, 886; *Department of Driver Services v. Secretary of State Merit Com.* (1985), 132 Ill. App. 3d 753, 754, 477 N.E.2d 1372, 1373.) In applying this rule of law, the court must consider the following statutory provision: " 'The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct.' (Ill. Rev. Stat. 1977, ch. 110, par. 274)." (85 Ill. 2d 547, 550, 426 N.E.2d 885, 887.) Further, it is not the function of the reviewing court to reweigh the evidence or to make independent determinations of fact (*General Electric Co. v. Fair Employment Practices Com.* (1976), 38 Ill. App. 3d 967, 349 N.E.2d 553), but to determine if the evidence as weighed by the trier of fact supports the findings (*Daniels v. Police Board* (1976), 37 Ill. App. 3d 1018, 349 N.E.2d 504). An agency's findings of fact are contrary to the manifest weight of the evidence only when the opposite conclusion is clearly apparent from the record. *Madonia v. Houston* (1984), 125 Ill. App. 3d 713, 466 N.E.2d 648.

The second step in the reviewing court's analysis is to determine whether the findings of fact provide a sufficient basis for the agency's conclusion that cause for discharge does or does not exist. (*Department of Mental Health & Development Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 426 N.E.2d 885.) This is not tested by the manifest weight of the evidence, but whether the decision is arbitrary, unreasonable, or unrelated to the requirements of the service. (See *Department of Driver Services v. Secretary of State Merit Com.* (1985), 132 Ill. App. 3d 753, 477 N.E.2d 1372 (and cases cited therein).) In view of the aforementioned principles, we consider the parties' contentions together with the record which was before the Commission in rendering its findings, that 14 charges were proved by a preponderance of the evidence, and its decision, that plaintiff's immediate discharge was warranted.

With regard to the first step of the aforementioned analysis, plaintiff contends that the Commission's findings are against the manifest weight of the evidence. Plaintiff asserts that the testimony of the complainants was conflicting and uncorroborated. In addition, plaintiff argues that he was the only black male in the office and that one of the complaining witnesses expressed a racial bias. Fur-

ther, plaintiff points out that he denied all the allegations against him. Thus, plaintiff concludes that the issue in the case was one of his testimony versus that of the complainants.

We have reviewed the administrative record and conclude that the evidence supports the Commission's findings. The testimony of the five complaining witnesses was sufficient to prove 14 of the 15 charges filed against the plaintiff. While it is true that the plaintiff denied all accusations made by the five complainants, the Commission was not bound to accept the plaintiff's version. As previously noted, it is not the function of this court to reweigh the evidence or reassess the credibility of the witnesses. Moreover, where, as here, the issue is one of conflicting testimony and credibility of witnesses, the Commission's findings should be upheld. (*E.g., Keen v. Police Board* (1979), 73 Ill. App. 3d 65, 391 N.E.2d 190.) Accordingly, we conclude that the evidence as weighed by the Commission supports the findings. *Daniels v. Police Board* (1976), 37 Ill. App. 3d 1018, 349 N.E.2d 504.

We next turn to the second step of the analysis. Plaintiff contends that in light of the "locker room" type atmosphere of the office, the Commission's decision to discharge him was arbitrary and, alternatively, that the sanction of discharge was excessive. Plaintiff asserts that his alleged misconduct was part of the normal working atmosphere. He further asserts the office supervisors tolerated such an atmosphere and even participated in the use of crude language and the telling of vulgar jokes. Additionally, plaintiff suggests that his alleged misconduct was not of a serious nature and that there was no evidence that he ever "actually threatened" the complainants. Defendants contend, and we agree, that the findings of fact provided a sufficient basis for the Commission's determination that cause for discharge existed.

Section 11 of the Personnel Code prohibits the discharge of employees except "for cause." (Ill. Rev. Stat. 1983, ch. 127, par. 63b111.) There is no statutory definition of "cause." "Cause" has been judicially defined as " 'some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position.' " (*Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 551, 426 N.E.2d 885, 887; *Fantozzi v. Board of Fire & Police Commissioners* (1963), 27 Ill. 2d 357, 189 N.E.2d 275.) As this court stated in *Parkhill v. Illinois Civil Service Com.* (1978), 58 Ill. App. 3d 291,

292, 374 N.E.2d 254, 256, such shortcoming need not be directly connected with the performance of the work; however, it must not be trivial, arbitrary or unreasonable.

The legislature has placed the function of the discipline of State employees in the administrative department, both as to establishing the standards and requirements of the service, and as to the sanctions imposed when violations are found. The courts have no role as a superior commission, and the question of whether cause for discharge exists is to be determined by the administrative agency, here, the Commission. (*Department of Driver Services v. Secretary of State Merit Com.* (1985), 132 Ill. App. 3d 753, 477 N.E.2d 1372.) The agency's decision as to cause will not be reversed unless it is arbitrary, unreasonable, or unrelated to the requirements of service. *Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 426 N.E.2d 885.

■ In the case at bar, the Commission determined that the 14 charges proved were of a "sufficiently serious nature" to preclude the requirement of progressive corrective discipline and that immediate discharge was warranted. On the record before us, we cannot say that the Commission's decision was arbitrary. The findings of fact, regarding the plaintiff's misconduct demonstrated substantial shortcomings which were detrimental to the discipline and efficiency of the service. (*Fantozzi v. Board of Fire & Police Commissioners* (1963), 27 Ill. 2d 357, 189 N.E.2d 275.) Contrary to plaintiff's assertions, these shortcomings were not trivial, arbitrary, or unreasonable.

Plaintiff goes to great lengths to argue that any misconduct on his part was justified and even "invited" in light of the locker-room atmosphere of the office. Plaintiff also suggests that his conduct should be excused because he did not actually threaten the five complainants. This argument lacks merit. The testimony revealed that the plaintiff's misconduct was significantly more serious in nature than that of his fellow employees. Moreover, the fact that some of plaintiff's co-workers may have participated in the use of vulgar language and the telling of "sex jokes" cannot be seen as justification for plaintiff's overt sexual harassment of the five complainants. Nor does the fact that plaintiff did not "actually" threaten the complainants render his misconduct excusable. The incidents here, involving vulgar, sexually related questions and comments; offensive and sexually suggestive noises, gestures, and physical movements; vulgar comments regarding one's anatomy and "sexual appearance"; "lewd" sexual overtures and attempts to "grab" or touch one's

breasts and buttocks should not and will not be condoned or excused.

Accordingly, we cannot say that the Commission's decision to discharge plaintiff was arbitrary.

■■ Finally, plaintiff argues in the alternative that the sanction of discharge is too severe on the facts of this case. In view of the fact that plaintiff had never been previously reprimanded or disciplined by the Secretary of State, he contends that he is entitled to progressive discipline. As defendants point out, however, the question in a case such as this is not whether the reviewing court would decide upon a more lenient sanction than discharge were it to determine initially what discipline would be appropriate. (See *Sutton v. Civil Service Com.* (1982), 91 Ill. 2d 404, 438 N.E.2d 147.) Nor is the question whether the court would conclude, in view of mitigating circumstances, that a different penalty would be more appropriate. (91 Ill. 2d 404, 438 N.E.2d 147.) Rather, the question is whether, in view of the circumstances presented, the court can say that the agency, in opting for discharge, acted unreasonably or arbitrarily or selected a type of discipline unrelated to the needs of service. (*Kloss v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 252, 449 N.E.2d 845.) As we have previously determined, the Commission's decision to discharge plaintiff was not unreasonable, arbitrary, or unrelated to the needs of service. Thus, irrespective of what decision we might have reached had we initially determined what sanction was appropriate, it would be an unwarranted reflection on the Commission's judgment for this court to overturn the discipline it decided upon in this case. *Sutton v. Civil Service Com.* (1982), 91 Ill. 2d 404, 438 N.E.2d 147.

For the foregoing reasons, the judgment of the circuit court of Sangamon County is affirmed.

Affirmed.

LUND and KNECHT, JJ., concur.