# Illinois Official Reports

## Appellate Court

---

*Robbins v. Department of State Police Merit Board*,
**2014 IL App (4th) 130041**

---

| | |
|---|---|
| Appellate Court Caption | CYNTHIA A. ROBBINS, Plaintiff-Appellee, v. THE DEPART-MENT OF STATE POLICE MERIT BOARD; THE DEPARTMENT OF STATE POLICE; and HIRAM GRAU, as Successor to Larry Trent, in His Capacity as Director of State Police, Defendants-Appellants. |
| District & No. | Fourth District<br>Docket No. 4-13-0041 |
| Filed | February 26, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In proceedings on a complaint filed by the Director of the Department of State Police seeking plaintiff's discharge based on her alleged multiple violations of the Illinois State Police Rules of Conduct, the trial court's orders on remand directing the Illinois State Police Merit Board to impose discipline less than discharge and the Board's final order suspending plaintiff for 180 days were vacated by the appellate court and the Board's original order discharging plaintiff was reinstated and affirmed, since the discharge order was not arbitrary, unreasonable, or unrelated to the needs of the Department of State Police, and the trial court acted improperly in substituting its judgment for that of the Board. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 09-MR-359; the Hon. Peter C. Cavanagh, Judge, presiding. |
| Judgment | Circuit court's judgment vacated in part and reversed in part; Merit Board's decision reinstated and affirmed. |

Counsel on
Appeal

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Timothy M. Maggio (argued), Assistant Attorney General, of counsel), for appellants.

James P. Baker (argued), of Baker, Baker & Krajewski, LLC, of Springfield, for appellee.

Panel

JUSTICE POPE delivered the judgment of the court, with opinion. Presiding Justice Appleton and Justice Holder White concurred in the judgment and opinion.

**OPINION**

¶ 1 In June 2008, the Director of the Department of State Police, commonly referred to as the Illinois State Police (ISP), filed a complaint with the ISP Merit Board (Merit Board or Board) seeking the termination of plaintiff, Cynthia A. Robbins, based on allegations she committed 11 violations of the Illinois State Police Rules of Conduct (Rules). Following a hearing, the hearing officer found Robbins committed 8 of the 11 alleged violations. In April 2009, the Merit Board unanimously adopted the findings and conclusions of the hearing officer and determined Robbins should be discharged from employment with the ISP. Robbins appealed the Merit Board's decision and the circuit court reversed and remanded the Board's discharge decision three times. On the final remand, the circuit court instructed the Merit Board it "shall not discharge Robbins from ISP employment, but shall instead impose a lesser form of discipline." In June 2012, the Merit Board issued its fourth and final order, suspending Robbins for 180 days. In December 2012, the circuit court affirmed.

¶ 2 Defendants appeal, asserting the following: (1) the Merit Board's findings Robbins committed eight violations of ISP rules were not against the manifest weight of the evidence; and (2) the Board acted reasonably in discharging Robbins.

¶ 3 We vacate the December 13, 2012, order of the circuit court, reverse the March 12, 2010, May 2, 2011, and May 14, 2012, orders of the circuit court, and reinstate and affirm the Merit Board's April 2009 order discharging Robbins for cause.

¶ 4 I. BACKGROUND

¶ 5 A. ISP Complaint

¶ 6 In June 2008, the Director of the ISP filed a complaint with the Merit Board alleging plaintiff, Cynthia A. Robbins, committed 11 violations of the ISP's Rules. The alleged violations included (1) identity theft (720 ILCS 5/16G-15(a)(7) (West 2006)) in violation of Rule 1 (count I); (2) official misconduct (720 ILCS 5/33-3(b) (West 2006)) in violation of Rule

1 (count II); (3) giving untruthful responses to ISP investigators in violation of Rule 41.c (count III); (4) battery (720 ILCS 5/12-3(a)(2) (West 2006)) in violation of Rule 1 (count IV); (5) criminal damage to property (720 ILCS 5/21-1(1)(a) (West 2006)) in violation of Rule 1 (count V); (6) harassment by telephone (720 ILCS 135/1-1(2), (3) (West 2006)) in violation of Rule 1 (count VI); (7) causing the ISP to be brought into disrepute in violation of Rule 8 (count VII); (8) conducting an unauthorized investigation in violation of Rule 30 (count VIII); (9) improper use of ISP equipment in violation of Rule 38 (count IX); (10) improper use of a squad car in violation of Rule 38 (count X); and (11) conduct unbecoming an officer in violation of Rule 7 (count XI).

¶ 7                         B. Evidence Introduced at the Hearing Before the Merit Board

¶ 8     Over the course of five days in November and December 2008, a hearing officer conducted proceedings. The following relevant evidence was produced during those proceedings.

¶ 9     In April 1999, Robbins began her career as a commissioned officer of the ISP, first working as an Illinois State Trooper and later as a special agent. For approximately 14 years, Robbins was in an intimate relationship with Carlo Jiannoni, a retired ISP lieutenant. This relationship had its "ups and downs," and at times Robbins and Jiannoni would separate for a period of time and not see each other, although they continued to communicate by telephone. During the summer of 2006, their relationship was strained and they stopped seeing each other, although they continued speaking by telephone every couple of days.

¶ 10    In November 2006, Robbins became concerned when Jiannoni failed to return her telephone calls. She had a key to Jiannoni's home so she went there and noticed something "was terribly wrong" as it appeared no one was living there. Robbins called Jiannoni's family and was informed Jiannoni had gone to Afghanistan. Robbins felt abandoned and betrayed because Jiannoni had not told her of his plans. Shortly after Thanksgiving 2006, Robbins learned Jiannoni was in a romantic relationship with another woman, Gilda Moriconi.

¶ 11    After discovering Jiannoni went to Afghanistan and was involved with Moriconi, Robbins reported she began drinking every day. She was not sleeping, had stopped eating, and lost a significant amount of weight. Her friends became concerned about Robbins' emotional well-being. She started staying at Jiannoni's house every weekend and one or two nights per week because doing so provided her with emotional comfort. She and Jiannoni continued to communicate by e-mail and telephone and he was aware she was staying at his house and had no objection at that time.

¶ 12    On December 4, 2006, Robbins accessed the Law Enforcement Agencies Data System (LEADS) to run random license plate searches using the term "Gilda." Robbins' search was not related to any investigation, such as a report of a suspicious vehicle. Robbins acknowledged Gilda Moriconi was the only "Gilda" she knew.

¶ 13    On December 11, 2006, Robbins again accessed LEADS and conducted a search on Moriconi's driver's license number, followed by a search on Moriconi's license plate. Robbins also conducted searches on the name "Gilda Moriconi" on 411.com, zabasearch (a website she learned of in a computer investigation class), and Google. Robbins acknowledged these searches were conducted on her work computer (owned by the State of Illinois) for personal reasons.

¶ 14    In December 2006 and January 2007, Robbins used her ISP computer to access and send e-mails from her personal Yahoo e-mail account. On December 17, 2006, Robbins used her ISP computer to access an e-mail she had previously sent to Jiannoni from her Yahoo account, including photographs attached to that e-mail. Several of those photographs, which were later retrieved from her temporary internet files, were pornographic in nature. Also using her work computer, Robbins either created or copied a sexually explicit e-mail she sent to Jiannoni. Robbins admitted accessing her Yahoo e-mail account but denied opening or creating either of the above e-mails from her ISP computer.

¶ 15    On December 19, 2006, Jiannoni e-mailed Robbins and told her to collect the keys to her house and truck from the console of his truck and asked her to leave his keys on the kitchen counter in his house. Robbins did not return Jiannoni's keys and continued accessing his residence.

¶ 16    On December 20, 2006, Robbins went to Jiannoni's house. According to Robbins, every piece of furniture, the carpeting, blankets, pillows, and walls had been sprayed down with cologne. Items belonging to Robbins were gone, the bedspread she had purchased had disappeared, and pictures she hung were removed and packaged up in a plastic bag. Robbins was furious and believed Moriconi was responsible. Robbins began placing a series of calls (approximately 15 to 18) to Moriconi that night, and she continued calling her into the morning. Robbins placed the calls to annoy Moriconi. When Moriconi answered the telephone, Robbins either remained silent or hung up. Robbins continued calling Moriconi whenever Moriconi did something to irritate her until May 2007.

¶ 17    On January 21, 2007, Robbins and Moriconi found themselves at Jiannoni's house at the same time. Although accounts differ as to the events that transpired, both Robbins and Moriconi agree they got into a verbal altercation and Robbins slapped Moriconi across the face.

¶ 18    The next day, Robbins contacted a locksmith, drove her police squad car to Jiannoni's house to meet the locksmith, and had him change the locks on Jiannoni's house. Robbins admitted Jiannoni had not authorized her to change the locks on his house, but stated she had spoken with his daughter about doing so. (Robbins knew this daughter was not in charge of caring for Jiannoni's house.) Robbins was concerned that Moriconi was going to destroy property inside the residence. After having the locks changed on Jiannoni's house, Robbins did not return to the house until May 2007.

¶ 19    On May 23, 2007, Jiannoni mistakenly called Robbins when he was home visiting from Afghanistan. Robbins became angry and told Jiannoni she was "coming to [his] house and [they were] going to talk." Robbins arrived at Jiannoni's house a short time later but he was not there. She went inside through the unlocked front door to use the restroom. On her way to the restroom, she noticed a folder on the bedroom dresser that said "Las Vegas trip." Robbins opened the folder and took the first page of the travel documents located inside, which included confirmation numbers and travel dates for Jiannoni and Moriconi's upcoming trip to Las Vegas. While in the restroom, Robbins noticed a prescription bottle belonging to Jiannoni and flushed the pills down the toilet.

¶ 20    Using the document she removed from the folder on Jiannoni's dresser, Robbins canceled Jiannoni and Moriconi's airline reservations. Although the airline representative referred to Robbins as "Ms. Moriconi," Robbins did not correct her. After canceling the original reservations, Robbins later presumed Jiannoni and Moriconi had made additional reservations

so she called the airline, discovered they had, and tried to cancel those reservations as well. She was unsuccessful in canceling the reservations because they were protected by a password. Robbins admitted she knew what she was doing was "wrong" and her conduct was not appropriate. (Jiannoni had to pay hundreds of dollars to replace the flights.)

¶ 21 In early June 2007, Robbins and Jiannoni met at the state fairgrounds and had a conversation about the breakdown of their relationship. During that conversation, Jiannoni said some things that made Robbins angry. Shortly thereafter, Robbins threw Jiannoni's truck key (and later his house key) into the Sangamon River. The following day, Robbins contacted Jiannoni's cellular telephone service provider, identified herself as "Gilda," and canceled his telephone service.

¶ 22 On July 30, 2007, Robbins voluntarily submitted to a criminal interview. During that interview, Robbins acknowledged she: (1) used her work computer for personal business; (2) threw Jiannoni's keys into the Sangamon River; (3) struck Moriconi; (4) canceled Jiannoni and Moriconi's airline reservations, and later tried to cancel them again; (5) called Moriconi numerous times in December of 2006; (6) ran Moriconi through LEADS; (7) changed the locks on Jiannoni's house; and (8) canceled Jiannoni's cellular telephone service.

¶ 23 On December 4, 2007, Robbins attended an administrative interview with the ISP. During this interview, Robbins told the investigators she ran Moriconi's license plate through LEADS "for law enforcement purposes only." Robbins stated she was concerned because Jiannoni's house was empty and isolated so she ran license plate numbers of vehicles "that had come down the lane." However, the LEADS records showed Robbins ran the name "Gilda" approximately one hour before she ran the license plate number.

¶ 24 In mitigation, Robbins offered the testimony of Thomas Low, Ph.D., a licensed clinical psychologist who met with Robbins from January 2007 through January 2008. During their initial visit, Robbins told Low of the breakup of her relationship with Jiannoni, that she had not been sleeping well, and she had lost 27 pounds. Low learned Robbins was taking an antidepressant prescribed by her physician at twice the standard dosage prescribed. Low diagnosed Robbins with major depression, noting her symptoms included weight loss, loss of appetite, inability to sleep, sadness, crying, and intense anger. Low testified persons suffering from major depression may engage in behavior they later regret, but acknowledged they still know right from wrong and have impulse control, although such control may be affected by the depression.

¶ 25 Robbins also argued, in assessing any discipline against her, the Merit Board should consider the discipline given to other officers for their misconduct. Those comparison cases relevant to this appeal will be discussed in greater detail below.

¶ 26 C. The Hearing Officer's Findings and the Merit Board's Decision

¶ 27 On April 6, 2009, the hearing officer issued his recommended findings of fact and conclusions of law. He concluded the ISP had proved 8 of the 11 alleged violations. Specifically, the hearing officer concluded Robbins had committed four violations of Rule 1 by committing (1) identity theft (720 ILCS 5/16G-15(a)(7) (West 2006)) when she posed as Moriconi to cancel airline reservations and Jiannoni's cellular telephone service; (2) battery (720 ILCS 5/12-3(a)(2) (West 2006)) when she slapped Moriconi across the face; (3) criminal damage to property (720 ILCS 5/21-1(1)(a) (West 2006)) when she threw Jiannoni's truck key into the Sangamon River, flushed his medication down the toilet, and changed the locks on his

door; and (4) telephone harassment (720 ILCS 135/1-1(2), (3) (West 2006)) when she made numerous unwanted telephone calls to Moriconi on December 20, 2006. Additionally, the hearing officer found Robbins committed four more violations of the ISP Rules when she (1) provided untruthful information to ISP investigators; (2) undertook an investigation of Moriconi without permission; (3) used her work computer to access her personal e-mail account, send personal e-mails, and conduct Internet searches on Moriconi; and (4) engaged in conduct unbecoming an officer by (a) making harassing telephone calls to Moriconi, (b) continuing to access Jiannoni's residence after he told her not to, (c) engaging in a verbal and physical altercation with Moriconi, (d) changing the locks on Jiannoni's residence, (e) canceling Jiannoni and Moriconi's airline reservations, (f) flushing Jiannoni's prescription medication down the toilet, (g) canceling Jiannoni's cellular telephone service, and (h) throwing Jiannoni's truck keys into the Sangamon River.

¶ 28  On April 20, 2009, the Merit Board unanimously adopted the findings and conclusions of the hearing officer and determined Robbins should be discharged from employment with the ISP.

¶ 29                              D. Circuit Court Proceedings

¶ 30  In May 2009, Robbins sought administrative review in the circuit court. In March 2010, the court reversed the decision of the Merit Board based on its conclusion the Merit Board did not comply with the Illinois Administrative Procedure Act (5 ILCS 100/10-50 (West 2006)) because it "failed to make any findings which turn or relate to the proper penalty which should be imposed against Robbins." On April 14, 2010, the Merit Board issued its second order. In this order, the Board found "the proven violations intentional, not inadvertent" and that Robbins' conduct reflected unfavorably on the department. The Board further found Robbins' "violations were related to her service as a State Police Officer and render[ed her] continued employment detrimental to the discipline and efficiency of the Department." The Board noted it had considered the aggravating and mitigating factors and unanimously concluded discharge was appropriate.

¶ 31  In May 2010, Robbins sought administrative review of the Merit Board's April 2010 order. In May 2011, the circuit court again reversed the Merit Board's decision and remanded for the purpose of determining the appropriate remedy. The court stated, "in the event [the Board] concludes that Robbins' discharge from ISP is an appropriate penalty," it must "make specific findings and conclusions as to why Robbins should be discharged rather than suspended" given the discipline assessed against other officers, her emotional well-being at the time of her misconduct, and her efforts "to recover from her emotional problems."

¶ 32  On July 22, 2011, the Merit Board issued its third order. The Board concluded "the misconduct proven against Robbins represents substantial shortcomings related to her service as an employee of the [ISP]." Her misconduct "occurred on many occasions over approximately eight months and resulted from intentional and knowing acts *** which constituted criminal conduct." Specifically, the Board noted as follows:

> "Robbins admitted to using the State computer and mail system for her personal use, throwing Jiannoni's truck and house keys in the river, striking Moriconi, cancelling and attempting to cancel Jiannoni and Moriconi's airline reservations, flushing Jiannoni's prescription medication down the toilet, cancelling Jiannonni's [*sic*] cell phone and using the police LEADS system for personal use. Robbins used her

- 6 -

State-issued computer to send and store nude and/or pornographic photographs and/or messages."

The Board acknowledged Robbins had sought treatment for her depression and that her friends were concerned about her emotional well-being. The Board noted, however, although she suffered from depression, Robbins knew right from wrong, and while she had sought treatment, she failed to disclose all of her misconduct to her counselor and continued to engage in misconduct during treatment. The Board also reviewed each disciplinary case offered by Robbins as comparisons and found as follows: (1) "the referenced cases are not similar or are distinguishable"; (2) none of the cases offered by Robbins as comparisons were as egregious as hers; and (3) the "remaining cases were not cases heard or decided by the Merit Board and therefore do not represent Merit Board precedent and are not comparable." Again, the Board unanimously decided to terminate Robbins for cause.

¶ 33    In August 2011, Robbins sought administrative review of the Merit Board's July 2011 decision. In May 2012, the circuit court issued its order reversing the Board's decision, concluding the Board acted unreasonably in (1) distinguishing the comparison cases and (2) disregarding Robbins' depression as a mitigating factor. The court instructed the Board that, "in determining the appropriate penalty, [it] shall not discharge Robbins from ISP employment, but shall instead impose a lesser form of discipline."

¶ 34    On July 20, 2012, the Merit Board issued its fourth order. The Board reaffirmed its previous findings and conclusions and again found the facts of the case warranted termination. However, pursuant to the circuit court's order, the Board (1) suspended Robbins for 180 days without pay and (2) ordered her to undergo a psychological evaluation before returning to active duty. In December 2012, the circuit court affirmed.

¶ 35    This appeal followed.

¶ 36                              II. ANALYSIS

¶ 37    On appeal, defendants, the Merit Board, the ISP, and Hiram Grau as successor to Larry Trent, in his capacity as Director of the ISP, assert the following: (1) the Board's findings Robbins committed eight violations of ISP rules were not against the manifest weight of the evidence; and (2) the Board acted reasonably in discharging Robbins.

¶ 38                         A. Standard of Review

¶ 39    Judicial review of an administrative agency's discharge decision involves a two-step analysis. *Merrifield v. Illinois State Police Merit Board*, 294 Ill. App. 3d 520, 528, 691 N.E.2d 191, 198 (1997). The first step is to determine whether the Board's findings are against the manifest weight of the evidence. *Id*. The second step "is to determine whether the factual findings are sufficient to support the Board's conclusion that 'cause' exists for *** discharge." *Id*. at 529, 691 N.E.2d at 198. "[B]ecause the Board is in the best position to determine the effect of [an] officer's conduct on the operations of the Department, its determination of 'cause' [is] given considerable deference." *Id*. at 530, 691 N.E.2d at 199. A "reviewing court will not decide whether a less stringent punishment is appropriate and will overturn the Board's decision only if it is arbitrary and unreasonable or unrelated to the requirements of service." *Id*.

¶ 40    A reviewing court reviews the decision of the administrative agency, not the decision of the circuit court. *Williams v. Illinois Civil Service Comm'n*, 2012 IL App (1st) 101344, ¶ 9, 968 N.E.2d 1238. "Where, as here, the circuit court remanded the matter to the [Board] to impose a lesser penalty than the original penalty of discharge, we can review the [Board's] original decision to discharge." *Id.*

¶ 41                                    B. The Merit Board's Factual Findings

¶ 42    Robbins does not argue the Merit Board's determination she violated 8 of the 11 alleged ISP Rules was against the manifest weight of the evidence. She argues only that the penalty of discharge assessed by the Merit Board was unrelated to the requirements of her service as an ISP officer. Thus, this court need not conduct the first-step analysis because, by failing to assert otherwise, Robbins concedes the Merit Board's factual findings.

¶ 43                                    C. Sufficient Cause for Discharge

¶ 44    Section 8 of the State Police Act (20 ILCS 2610/8 (West 2006)) vests in the Merit Board jurisdiction over the "discipline, removal, demotion and suspension of Department of State Police officers." While the Director of the ISP is authorized to suspend an officer for up to 30 days, any discipline in excess of 30 days must be imposed by the Merit Board. 20 ILCS 2610/13, 14 (West 2006).

¶ 45    Section 14 of the State Police Act (20 ILCS 2610/14 (West 2006)) provides no State Police officer shall be removed "except for cause." The term "cause" "has been judicially defined as some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position." (Internal quotation marks omitted.) *Merrifield*, 294 Ill. App. 3d at 529-30, 691 N.E.2d at 198-99. "[B]ecause the Board is in the best position to determine the effect of the officer's conduct on the operations of the Department, its determination of 'cause' will be given considerable deference." *Id.* at 530, 691 N.E.2d at 199. "A reviewing court will not decide whether a less stringent punishment is appropriate and will overturn the Board's decision only if it is arbitrary and unreasonable or unrelated to the requirements of service." *Id.*

¶ 46                                    1. *Comparison Cases*

¶ 47    In support of her position the Merit Board's discharge decision was not related to the requirements of service, Robbins offers the disciplinary determinations made in eight other ISP employee cases, none of which resulted in the discharge of the employee. Robbins contends the cited cases are significant in these proceedings because (1) they undermine the notion Robbins' discipline was related to the requirements of service, (2) many involve individuals who held a higher rank than Robbins, and (3) the misconduct committed in the cited cases involved conduct which, although not precisely identical, was at least as egregious as hers.

¶ 48    Specifically, Robbins asks this court to consider the following ISP disciplinary cases to which the parties stipulated during the proceedings before the Merit Board:

    (1) The Merit Board's 90-day suspension of Sergeant D.V. in May 1994 after she admitted (a) falsifying written warnings to motorists and forging the motorists

signatures on many of the written warnings; (b) lying to her supervisor by denying she did so when questioned; and (c) striking motorists' vehicles with her flashlight, sometimes causing damage to the vehicle; and (d) the February 2006 10-day suspension for recording telephone conversations without the knowledge or consent of the other parties to the conversations;

(2) The Merit Board's 35-day suspension of Lieutenant Colonel R.W. following an August 2005 incident where he struck a person on the chin with a closed fist and then left the establishment;

(3) The Merit Board's 45-day suspension (the ISP Director had sought a 180-day suspension) imposed upon Trooper T.H. for a September 2001 incident where he struck his son with a belt on the buttocks at least five times and later struck his son on both sides of his mouth with his hand;

(4) The Merit Board's approval of a settlement agreement suspending Lieutenant T.K. for 30 days (ISP originally sought a 190-day suspension and a demotion to Master Sergeant) following a November 2001 incident where he entered the residence of another through the use of force, damaged two doors in the process, and engaged in a verbal and physical altercation with the resident. Additionally, T.K. used his state-issued cellular telephone for personal use on multiple occasions. The agreement also provided T.K. would receive written counseling for use of the cellular telephone, and he was allowed to retire;

(5) A 20-day suspension imposed upon Trooper R.A., by the Director of ISP, for engaging in sexual activity with a female in his squad car while on duty in May 1996;

(6) A two-day suspension imposed upon Sergeant K.S., by the Director of ISP, for his October 2003 conduct that included: (a) using his position as an ISP officer to obtain information from the Edwardsville police department regarding flowers sent to his wife and how to access a public school's voice and e-mail system; (b) engaging in telephone harassment; and (c) pushing his wife to the floor, grabbing her by the neck, and threatening to kill her;

(7) A 30-day suspension imposed upon Trooper B.R., by the Director of ISP, for multiple acts of domestic violence against a female companion in March 2002; and

(8) An April 2001 investigation into allegations that Deputy Director H.N. struck his daughter with a belt and slapped her across the face on at least five separate occasions, but resulted in no discipline by the Merit Board. The reference to this case is contained within Trooper T.H.'s file. The case was referred to the Department of Children and Family Services, which did not indicate H.N. for abuse. The case was dismissed by the Division of Internal Investigations.

¶ 49    In its final reversal of the Merit Board's decision, the circuit court reversed, in part, because it found the Merit Board's explanation for terminating, rather than suspending, Robbins' employment was unreasonable in its view. However, as noted by defendants, "the fact that different individuals have been disciplined differently is not a basis for concluding that an agency's disciplinary decision is unreasonable; such conclusions are appropriate when individuals receive different discipline in a single, identical, 'completely related' case." *Siwek v. Police Board*, 374 Ill. App. 3d 735, 738, 872 N.E.2d 87, 90 (2007) (quoting *Launius v. Board of Fire & Police Commissioners*, 151 Ill. 2d 419, 441-42, 603 N.E.2d 477, 487 (1992));

see also *Caliendo v. Martin*, 250 Ill. App. 3d 409, 421, 620 N.E.2d 1318, 1327 (1993) (trial court did not abuse its discretion in determining evidence of sanctions in other bribery cases that "did not involve the same surrounding circumstances," "took place during different times under completely unrelated circumstances," and arose in the context of guilty pleas had such a "complete lack of similarity" that the evidence was irrelevant); *Wilson v. Board of Fire & Police Commissioners*, 205 Ill. App. 3d 984, 992, 563 N.E.2d 941, 946 (1990) (remanding for a new hearing on sanctions where one party to the altercation was suspended for 30 days while the other party to the same altercation was discharged because "the events surrounding these cases were completely related"). Further, the violation of a single rule may be substantial enough to warrant discharge. *Siwek*, 374 Ill. App. 3d at 738, 872 N.E.2d at 90.

¶ 50       Robbins acknowledges some Illinois courts have found an administrative agency's failure to consider the discipline assessed against another in an unrelated case did not make its discharge decision unreasonable, but she asserts those cases turned upon the particular facts presented and did not adopt a bright-line rule. However, Robbins does not provide us with any authority that supports the proposition a discharge decision was unreasonable because the agency failed to consider unrelated cases. While a "hearing officer may consider sanctions imposed in similar cases," "each case must be considered on its merits [citation] and it is for the [agency] to determine the appropriate sanction in each case [citation]." *Siddiqui v. Department of Professional Regulation*, 307 Ill. App. 3d 753, 764, 718 N.E.2d 217, 228-29 (1999).

¶ 51       Robbins' misconduct spanned a period of eight months and included, in part, the following: Robbins (1) used her ISP computer and software available only to ISP employees to conduct investigations into Moriconi for personal reasons while on duty; (2) accessed or created sexually explicit e-mails on her work computer, including photographs that were pornographic in nature; (3) refused to return Jiannoni's house keys when asked to do so; (4) harassed Moriconi by repeatedly telephoning her whenever Moriconi irritated her; (5) slapped Moriconi in the face; (6) drove her squad car to Jiannoni's house to meet the locksmith she had contacted to change Jiannoni's door locks without his permission; (7) flushed Jiannoni's prescription medication down the toilet; (8) impersonated Moriconi and canceled Jiannoni and Moriconi's airline reservations, attempted to cancel the airline reservations a second time, and canceled Jiannoni's cellular telephone service; and (9) threw Jiannoni's truck and house keys into the Sangamon River. Not only did Robbins' conduct violate ISP Rules, but much of her conduct also violated criminal statutes.

¶ 52       It was not error for the Merit Board to find the aforementioned cases distinguishable or irrelevant in the proceedings before it. None of the cases Robbins cites are "completely related" to her conduct as they involve different violations during different time spans. We also note the Merit Board was only involved with four of the cases cited by Robbins, *i.e.*, T.H., D.V., R.W., and T.K. The other cases involved discipline meted out by the Director of the ISP.


¶ 53                           2. *Robbins' Mental Illness*

¶ 54       Defendants also assert despite Robbins' depression, she knew right from wrong at the time of her misconduct and, thus, the Merit Board acted reasonably in discharging her. They argue the circuit court engaged in impermissible fact-finding by concluding "the symptoms of [Robbins'] depression contributed in a substantial part toward her misconduct," and then imposing its judgment in place of the Merit Board's by concluding Robbins' depression,

- 10 -

combined with the comparative disciplinary sanctions, made discharge improper. Robbins contends, however, the Merit Board's discharge decision was arbitrary and/or unreasonable because the Merit Board (1) considered her mental illness as an aggravating, rather than mitigating, factor; (2) disregarded her efforts to recover from her mental illness by seeking treatment; (3) overstated the duration of her misconduct; and (4) erred in factoring into its decision the fact Robbins (a) was not completely forthcoming with Dr. Low and (b) failed to see a psychiatrist as recommended by Dr. Low. Further, Robbins asserts the Board's conclusion she knew right from wrong at the time of her conduct was irrelevant because she never argued otherwise. We agree with defendants.

¶ 55 An administrative agency "need not give mitigating evidence such weight that it overcomes its discharge decision, and a discharge in a case where mitigating evidence was presented is not *per se* arbitrary or unreasonable." *Malinowski v. Cook County Sheriff's Merit Board*, 395 Ill. App. 3d 317, 323, 917 N.E.2d 1148, 1153 (2009) (citing *Siwek*, 374 Ill. App. 3d at 738-39, 872 N.E.2d at 90).

¶ 56 Robbins cites *Walsh v. Board of Fire & Police Commissioners*, 96 Ill. 2d 101, 449 N.E.2d 115 (1983), and *Kloss v. Board of Fire & Police Commissioners*, 96 Ill. 2d 252, 449 N.E.2d 845 (1983), for the proposition where an employee's misconduct is substantially related to a psychiatric issue, the proper disciplinary sanction may be something other than discharge for cause. We agree in some cases the proper disciplinary sanction *may* be something other than discharge for cause; however, neither *Walsh* nor *Kloss* holds discharge is never appropriate where mental illness is concerned, or mental illness absolves the employee from his or her intentional, knowing misconduct.

¶ 57 In *Walsh*, an officer was discharged after shooting a fellow officer and friend at his house. *Walsh*, 96 Ill. 2d at 103-05, 449 N.E.2d at 115-16. At the time of the shooting, the officer was on medical suspension for psychiatric treatment and receiving a disability pension. *Id*. at 104, 449 N.E.2d at 116. The supreme court reversed the discharge decision and remanded for further proceedings, holding "because the psychiatric evidence presented was so vague and because the board's decision to discharge Sergeant Walsh for cause may jeopardize his pension rights," fairness and justice required the board to consider additional evidence "relevant to the issue of whether Sergeant Walsh's misconduct was substantially the result of the psychiatric problems that led to his prior medical suspension." *Id*. at 108, 449 N.E.2d at 118. The court further noted, if the board found his misconduct was substantially related to his psychological problems, "the proper sanction would be other than discharge for 'cause.' " *Id*. at 108, 449 N.E.2d at 119. The primary reason for the court's remand was to preserve his disability pension if possible. Unlike *Walsh*, Robbins was not receiving a disability pension for psychiatric issues at the time of her many incidents of misconduct. Further, Robbins is not asking to be discharged for something other than "cause," but instead is asking to be reinstated as an officer. Last, Robbins does not argue her depression caused her to engage in the improper conduct at issue here; she argues only it is a mitigating factor.

¶ 58 In *Kloss*, an officer was discharged for cause following an incident at his apartment where, among other things, he threatened suicide and pointed a handgun at a police sergeant. *Kloss*, 96 Ill. 2d at 254-56, 449 N.E.2d at 847. The police officers who responded to Kloss's apartment found Kloss's behavior to be so irrational that they took him to the hospital instead of arresting him. *Id*. at 258, 449 N.E.2d at 849. His irrational behavior occurred after Kloss, who had not consumed alcohol in two years, drank five beers after taking barbiturates he had been

prescribed for bleeding ulcers. *Id.* at 256, 449 N.E.2d at 847-48. Kloss was only able to remember " 'bits and pieces.' " *Id.* at 256, 449 N.E.2d at 848. A paramedic testified the combination of alcohol and barbiturates could have a synergistic effect. *Id.* The supreme court remanded to the board for a proper disposition, noting, "[t]he evidence presented to the board raised the strong possibility that plaintiff's irrational behavior stemmed from an inadvertently induced adverse reaction to his medication." *Id.* at 259, 449 N.E.2d at 849. Unlike *Kloss*, Robbins does not assert her misconduct was the result of an adverse reaction to her medication. Additionally, Robbins' psychologist agreed Robbins knew her actions were wrong at the time of her misconduct.

¶ 59        In *Sutton v. Civil Service Comm'n*, 91 Ill. 2d 404, 438 N.E.2d 147 (1982), an employee with the Department of Corrections was discharged for asking an inmate how much it would cost to assassinate the warden. *Sutton*, 91 Ill. 2d at 406, 438 N.E.2d at 148. The employee asked "this court to consider [in mitigation] *** his frustration after [previously] being reprimanded, which caused him to make the statements attributed to him, and the fact that these statements were made thoughtlessly." *Id.* at 411, 438 N.E.2d at 150. The court declined to do so, noting the question before it was not whether the court would have determined a more lenient sanction was appropriate given the mitigating circumstances, but "whether, in view of the circumstances presented, [the] court can say that the Civil Service Commission, in opting for discharge, acted unreasonably or arbitrarily or selected a type of discipline unrelated to the needs of the service." *Id.* at 411, 438 N.E.2d at 151. Similarly, in *McBroom v. Board of Education of District No. 205*, 144 Ill. App. 3d 463, 494 N.E.2d 1191 (1986), the plaintiff, a tenured teacher who was discharged, argued the theft that led to her discharge was caused by a "severe grief reaction and depression." *Id.* at 471, 494 N.E.2d at 1197. The appellate court rejected her argument, noting the record demonstrated "at the time she committed the theft she knew her conduct was wrong, she knew what she had done, and she was capable of bringing her conduct into conformance with the law." *Id.* at 472-73, 494 N.E.2d at 1197. Accordingly, the court held the hearing officer did not err in concluding "plaintiff's misconduct was not the substantial result of her psychological problems." *Id.* at 473, 449 N.E.2d at 1197.

¶ 60        In this case, the Merit Board recognized Robbins, like the plaintiff in *McBroom*, suffered from depression at the time of her misconduct and she sought treatment for her depression. However, the Board also determined despite her depression, Robbins knew right from wrong but chose to engage in the improper conduct anyway. Robbins was not completely forthcoming with Dr. Low about her conduct and did not seek the treatment of a psychiatrist as he recommended. The Board concluded, "[t]he fact that Ms. Robbins recognized she was out of control enough to seek counseling but still refused to discontinue her abusive and retaliating behavior does not mitigate the penalty she deserves."

¶ 61        The record demonstrates the Merit Board considered Robbins' depression as a mitigating factor. The Board was not required to give this evidence such weight that it overcame its decision to discharge her from employment with the ISP. Our role on judicial review is not to determine if we would have issued a more lenient sanction than discharge, but whether the Board's decision was arbitrary, unreasonable, or unrelated to the needs of service. See *Sutton*, 91 Ill. 2d at 411, 438 N.E.2d at 151. Thus, we find the Board's decision to discharge Robbins from employment with the ISP due to her misconduct over an eight-month period of time in which she violated several ISP Rules–half of which amounted to criminal conduct–was neither arbitrary, unreasonable, nor unrelated to the needs of service. The circuit court overstepped its

authority by improperly substituting its judgment for the Merit Board's and ordering the imposition of a sanction other than discharge. See *Williams*, 2012 IL App (1st) 101344, ¶ 13, 968 N.E.2d 1238.

¶ 62                                      III. CONCLUSION

¶ 63        For the reasons stated, we vacate the December 13, 2012, order of the circuit court, reverse the March 12, 2010, May 2, 2011, and May 14, 2012, orders of the circuit court, and reinstate and affirm the Merit Board's April 2009 order discharging Robbins for cause.

¶ 64        Circuit court's judgment vacated in part and reversed in part; Merit Board's decision reinstated and affirmed.